UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

JOHNATHAN MASTERS,                                                                          Plaintiff,

v.                                                                        Civil Action No. 3:13-cv-00034-DJH

AARON BROWNING, et al.,                                                                  Defendants.

\* \* \* \* \*

**MEMORANDUM OPINION AND ORDER**

Plaintiff Johnathan Masters claims that Aaron Browning and Joel Casse, two detectives with the Louisville Metro Police Department (LMPD), violated his constitutional rights after the three individuals engaged in a physical confrontation that ended in Masters's arrest. Both detectives assert that they are entitled to qualified immunity because the incident occurred while they were acting in their official capacities as law enforcement officials. Browning and Casse have separately moved for summary judgment and their motions are now before the Court (Docket Nos. 38, 39, 46, 47, 48). For the reasons set forth below, the Court will grant Browning's motion for summary judgment, and it will grant in part and deny in part Casse's motion for summary judgment.

### I.     FACTUAL BACKGROUND

In December 2012, LMPD Detectives Browning and Casse were on duty near 4th and M streets in Louisville, Kentucky. (D.N. 19, PageID # 71) Both detectives were in plain clothes and riding together in an unmarked white car. (D.N. 38-1, PageID # 118) Just before their interaction with Masters, the detectives received a tip that a robbery suspect was in the area. So Casse, who was driving the vehicle, performed a "U-turn" in the intersection. As Casse was

1

performing the turn, Masters, who was in the roadway, came into Casse's field of vision. At this point, the parties' versions of the facts diverge.

According to the detectives, Browning told Masters to get out of the way but Masters ignored them and refused to move. (D.N. 38-1, PageID # 119) Detective Casse then maneuvered the car around Masters so as to continue searching for the suspect. While doing so, the detectives learned that the burglary had been in a different area and the suspected burglar was actually located elsewhere. Casse says he stopped the car after observing Masters waiving his hands in the air and shouting. Casse avers that he started yelling "police" as he opened the car door to get out. (D.N. 38-1, PageID # 119) He states that Masters then approached the vehicle and that Masters attacked Casse before the detective used any force against him. As Masters punched Casse, Casse maintains that he continued to announce himself as police. (D.N. 38-1, PageID # 119)

While Masters's telling varies in some significant aspects, he does admit to striking Detective Casse on the head before Casse exited the car. (D.N. 46, PageID # 268; D.N. 19, PageID # 71) He says the initial punch came after an exchange in the middle of the street. Masters claims to have been crossing the street when the detectives almost hit him with the car. (D.N. 46, PageID # 267) He complains that he had to lean away in order to avoid impact and believed that the car was attempting to hit his legs. Masters further claims that as the detectives passed him, one of them yelled, "get the f[**]k out of the road," and Masters called back with "f[**]k you." (D.N. 46, PageID # 267-68) Masters testified that the detectives then "lost their minds and just sped around and stopped right in front of me." (D.N. 46, PageID # 268) Masters claims that he was unaware of who was in the car; he thought he was about to be assaulted and

2

feared for his life. Consequently, despite the near-miss, and despite being outnumbered, Masters took the initiative and struck Detective Casse.

Masters avows that he and Casse then "squared up getting ready to fight." (D.N. 46, PageID # 268) As Casse and Masters began swinging at each other, Detective Browning exited the passenger side of the car and approached Masters. (*Id.*) Masters maintains that either Casse or Browning then punched him once or twice in the ribs. (*Id.*) Masters claims that this is when he first learned that Browning and Casse were police officers. (*Id.*) Upon realizing that he was fighting policemen, Masters claims that he stepped back "for one or two second[s]" to assess the veracity of the statement. (D.N. 46, PageID # 269) He then noticed that Casse had a gun, badge, or something "police-y" under his clothes and he put his hands up and surrendered. (D.N. 46, PageID # 268-69) In that same instant, Browning tackled both Masters and Casse to the ground. (D.N. 46, PageID # 269)

Once Masters was on the ground, he alleges that he was "pretty submitted to police."[1] (D.N. 46, PageID # 269) While on the ground, Casse concedes that he wrestled himself on top of Masters. (D.N. 38-1, PageID # 120) The parties agree that Casse then tried to punch Masters in the face, but Masters turned his head and Casse's fist hit the ground. (D.N. 46, PageID # 269) The parties further agree that Casse, using his other hand, successfully punched Masters in the face and broke Masters's nose. (D.N. 46, PageID # 269) Masters was eventually handcuffed

---

[1] The detectives argue that Masters's statement that he was only "pretty submitted to police" evidences that the struggle was not over once Masters was on the ground. They argue that the struggle concluded only after Casse punched Masters in the nose. (D.N. 38-1, PageID # 121) In his brief, Masters argues that he was fully submitted to the detectives once he was on the ground but that he was able to move his head to avoid Casse's punches. (D.N. 46, PageID # 273) Of course, for purposes of considering the motions for summary judgment, the Court must consider the facts in a light most favorable to Masters. The Court (and certainly no reasonable jury), however, cannot simply ignore the plaintiff's own word, "pretty," given under oath and while represented by counsel, which modifies the word "submitted," and suggests something less than full submission to the police officers.

3

and placed on the curb.  (*Id.*)  Masters does not claim to have been assaulted after being handcuffed.

Masters was charged with resisting arrest, assault of a police officer in the third degree, menacing, and disorderly conduct in the second degree.  (D.N. 46, PageID # 268)  He was ultimately convicted by a Jefferson County District Court jury only of menacing, a class B misdemeanor under Kentucky law.  (D.N. 38-1, PageID # 121)

Masters filed this action pursuant to 42 U.S.C. § 1983, alleging violations of his Fourth, Eighth, and Fourteenth Amendment rights, and asserting state law claims of assault and battery and malicious prosecution.  He seeks both punitive and compensatory damages, including costs for past and future medical expenses.  (D.N. 19, PageID # 69-76)  The Defendants argue that they are entitled to qualified immunity with respect to both the constitutional and state law claims.  They also move for summary judgment against Masters's claims for punitive and compensatory damages, including medical costs resulting from his broken nose.  In response, Masters responds that the officers acted beyond their scope of duty as police officers and should be held individually liable.  He concedes that discovery has not provided sufficient evidence to support all of his claims and has only contested summary judgment as to the Fourth Amendment excessive force claims, the state law battery claims, and the punitive and compensatory damages claims.  (D.N. 46, PageID # 266; D.N. 42-3, PageID # 260)

## II.  STANDARD

In order to grant a motion for summary judgment, the Court must find that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a).  The moving party bears the initial burden of identifying the basis for its motion and the parts of the record that demonstrate an absence of any genuine issue

4

of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). If the moving party satisfies this burden, the non-moving party must point to specific facts demonstrating a genuine issue of fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

While the Court must review the evidence in a light most favorable to the non-moving party, the non-moving party must do more than "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The non-moving party must present specific facts demonstrating that a genuine issue of fact exists by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence . . . of a genuine dispute." Fed. R. Civ. P. 56(c)(1). The non-moving party must establish a genuine issue of material fact with respect to each element of each of his claims. *Celotex*, 477 U.S. at 322-23. The mere existence of a scintilla of evidence in support of the non-moving party's position will be insufficient. Instead, there must be evidence upon which a jury could reasonably find for the non-moving party. *Anderson*, 477 U.S. at 252.

### III. DISCUSSION

#### A. Qualified Immunity and Excessive Force

The Court will first examine whether, taking the facts in the light most favorable to Masters, the Defendants are entitled to qualified immunity in relation to Masters's Fourth Amendment excessive force claims.[2] Under the doctrine of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil

---

[2] Masters brought his Fourth Amendment claims pursuant to 42 U.S.C. § 1983. That statute states that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law." 42 U.S.C. § 1983.

5

damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity balances two separate interests—the need to hold public officials accountable when they abuse authority and the need to protect officials from harassment that may prevent them from discharging their duties. *See Pearson v. Callahan*, 555 U.S. 223, 231 (2009). Qualified immunity protects public officials from liability for "all but the plainly incompetent or knowingly [illegal]" conduct. *Malley v. Briggs*, 475 U.S. 335, 341 (1986) (alteration in original). It therefore allows for reasonable mistakes. *Simmonds v. Genesee Cty.*, 682 F.3d 438, 443 (6th Cir. 2012).

The Sixth Circuit uses a two-prong test to determine whether public officials may be held individually liable for their official acts. *Chappell v. City of Cleveland*, 585 F.3d 901, 907 (6th Cir. 2006). First, a plaintiff must demonstrate that a public official violated a constitutional right based on the facts alleged. *Id.* Second, a plaintiff must show that the right in question was clearly established at the time of the violation. *Id.* The applicability of qualified immunity is a question of law to be determined by the Court. *Heflin v. Stewart Cty., Tenn.*, 958 F.2d 709, 717 (6th Cir. 1992).

Both Browning and Casse assert that qualified immunity shields them from liability in this matter. The Court will consider their claims in turn.

### 1. The Excessive Force Claim Against Detective Casse

#### a. Violation of Constitutional Right

To determine whether Detective Casse is entitled to summary judgment based on qualified immunity, the Court must first determine if a reasonable jury could find that Casse violated one of Masters's constitutionally guaranteed rights. Masters claims that the detectives

6

violated the Fourth Amendment prohibition of the excessive use of force. As an initial matter, the Court notes that Masters also brought suit under 42 U.S.C. § 1983 alleging violations of the Eighth and Fourteenth Amendments. However, the Eighth Amendment applies only after an individual has been convicted of a crime. *See Ingraham v. White*, 430 U.S. 651, 651 (1977). Likewise, the Supreme Court has held that claims of excessive force in the context of an arrest or seizure "should be analyzed under the Fourth Amendment and its 'reasonableness' standards, rather than under the 'substantive due process' approach" of the Fourteenth Amendment. *Graham v. Connor*, 490 U.S. 386, 395 (1989). For these reasons, and because Masters failed to address either the Eighth or Fourteenth amendment claims in his response brief, the Court finds that summary judgment is appropriate on those claims.

Excessive force claims in the context of an "arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard." *Jones v. City of Cincinnati*, 521 F.3d 555, 559 (6th Cir. 2008) (citing *Graham*, 490 U.S. at 395). For the purpose of the present analysis, and applying the facts in a light most favorable to the Plaintiff, the Court concludes that Masters was seized once the Defendants announced that they were police officers and once Browning tackled Masters to the ground.[3] At that moment, Masters succumbed to both physical force and a show of authority.

"Determining whether the force used to effect a particular seizure is 'reasonable' under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on

---

[3] The Fourth Amendment only protects against unreasonable seizures; it is not a guarantee against unreasonable or outrageous official conduct generally. *See, e.g.*, *Galas v. McKee*, 801 F.2d 200, 202 (6th Cir. 1986). A Fourth Amendment seizure occurs when a police officer restrains the liberty of a citizen in such a way that a reasonable citizen would reasonably believe that he was not free to leave. *Michigan v. Chesternut*, 486 U.S. 567, 573 (1988). A seizure does not occur until the subject is successfully detained by physical force or by a show of authority. *See California v. Hodari D.*, 499 U.S. 621, 629 (1990) (holding that suspect was not seized while fleeing from pursuing officer until officer tackled him, bringing him under physical control).

the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Graham*, 490 U.S. at 388. Courts must evaluate excessive force claims by assuming "the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* at 396. "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers . . . violates the Fourth Amendment." *Id.* To assess reasonableness, courts must consider that "police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id.*

The jurisprudence on excessive force claims has consistently maintained that "the test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application." *Id.* Instead, its proper application requires careful attention to the particular facts and circumstances of each individual case. *Id.* Nonetheless, the Supreme Court has articulated three factors for courts to consider when analyzing the totality of the circumstances: (1) the severity of the crime at issue; (2) whether the suspect poses an immediate safety threat to the police or the public; and (3) whether the suspect is attempting to resist or evade arrest. *Id.*

Here, under the facts as alleged by Masters, the Court finds that the analysis under *Graham* leads to mixed results. Pursuant to the first *Graham* factor, the Court notes that the crime for which Masters was ultimately convicted was not particularly severe. *See* Ky. Rev. Stat. § 508.050. In fact, Masters was not engaged in an obvious crime, nor was he a suspect in a crime, when the Defendants initiated contact with him. Moreover, according to Masters, Casse initially told Masters at the conclusion of the scuffle that he would agree to merely cite and release Plaintiff. (D.N. 46, PageID # 262) Masters was only arrested after a sergeant later arrived on the scene and decided that an arrest was appropriate. (D.N. 46, PageID # 262)

8

Contrary to those instances where courts have found that an excessive amount of force was justified based on the severity of the crime in question, the crime of menacing is not particularly severe. *Compare Graves v. Bowles*, 419 F. App'x 640, 643 (6th Cir. 2011) (concluding that force was not unreasonable in part because officers suspected defendant had just robbed a bank and had brandished a gun), *with Goodwin v. City of Painesville*, 781 F.3d 314, 322 (6th Cir. 2015) (finding that a jury could conclude that disorderly conduct is not a violent or serious crime and that that fact weighed in favor of using less force to arrest a suspect), *and Baker v. Union Twp.*, 587 F. App'x 229, 234 (6th Cir. 2014) (noting that the crime at issue—a non-violent misdemeanor—was not severe and thus did not warrant the use of violent force). Though the first factor weighs in favor of a finding of unreasonableness, the subsequent factors do not.

By the time Masters learned that the Defendants were police officers, the evidence regarding whether he remained a threat to the detectives or to the public is mixed. Masters claims that he was acting in self-defense because he was unaware that the Defendants were police officers. (D.N. 19, PageID # 71) Masters asserts that he believed that two members of the public were attempting to accost him and that his only option was to act in self-defense. However, when Masters learned that the Defendants were police officers, he claims that he stepped back, raised his hands, and ceased fighting. Once Masters was tackled to the ground, he claims he was "pretty submitted to [the] police." This factor weighs in the Plaintiff's favor, by a slim margin, but only if one considers the facts in a light most favorable to him, as the Court must do at this stage.

The third factor also produces mixed results. While striking a police officer would typically be obvious and strong evidence of a clear intent to resist arrest, Masters claims that he

struck Casse before learning Casse was a policeman. Accepting that claim as true neutralizes this factor for Casse.

Considering the totality of the circumstances, and viewing the facts in the light most favorable to Masters, the Court finds that Masters has provided sufficient evidence for which a reasonable jury might find that Casse violated his Fourth Amendment right by using excessive force to carry out a seizure.

### b. Clearly Established Right

Despite a finding that the allegations establish a violation of a constitutional right, Casse could still be entitled to qualified immunity if the right alleged to have been violated was not "clearly established" at the time of the seizure. Under this analysis, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). Here, it must be determined whether it would have been clear to a reasonable officer in Casse's position that punching Masters in the face while he was "pretty submitted to [the] police" was unreasonable and constituted a violation of Masters's rights. *See Graham*, 490 U.S. at 397.

In the Sixth Circuit, it is clearly established that an officer may not use additional gratuitous force against a compliant, non-threatening individual, or against a suspect who has been restrained, especially when the individual has committed a relatively minor crime. *See, e.g., Phelps v. Coy*, 286 F.3d 295, 301 (6th Cir. 2002) (finding "no governmental interest in continuing to beat [the defendant] after he had been neutralized, nor could a reasonable officer have thought there was"); *McDowell v. Rogers*, 863 F.2d 1302, 1306-07 (6th Cir. 1988) (holding that hitting a handcuffed suspect with a nightstick when the suspect was not resisting was gratuitous and unreasonable); *Shreve v. Jessamine Cnty. Fiscal Court*, 453 F.3d 681, 688 (6th

Cir. 2006) ("Cases in this circuit clearly establish the right of people who pose no safety risk to the police to be free from gratuitous violence during arrest."). The Sixth Circuit has also held that it is unreasonable to use significant force on a restrained subject, even if some level of passive resistance is presented. *See Meirthew v. Amore*, 417 F. App'x 494, 499 (6th Cir. 2011).

Under the facts as alleged by Masters—that he had surrendered and was on the ground and "pretty submitted to [the] police" when Casse punched him in the face—the Court finds that there is sufficient evidence so that a reasonable jury could find that Masters had been subdued at the time the excessive force was used.

### 2. The Excessive Force Claim Against Detective Browning

Following the same qualified immunity and excessive force standards as applied above, the Court will first assess whether the evidence indicates that Detective Browning violated one of Masters's constitutionally guaranteed rights. *See Chappell*, 585 F.3d at 907. Like the claim against Casse, Masters asserts that Browning violated his Fourth Amendment right to be free from the use of excessive force during an arrest or seizure.

As discussed previously, determining whether a certain amount of force was reasonable under the Fourth Amendment requires a balancing of "the nature and quality of the intrusions on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Tennessee v. Garner*, 471 U.S. 1, 8 (1985). The reasonableness of an officer's use of force should be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight. *Graham*, 490 U.S. at 396. "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id.* at 396-97.

Based on Masters's proffered facts, the only applicable allegation of excessive force by Browning pertains to the tackling of Masters. As noted previously, excessive force claims are analyzed under the Fourth Amendment when a seizure has occurred. The Court previously determined that a seizure occurred when the officers identified themselves and Masters was tackled to the ground. *See supra*, Part III.A.1.a. While Masters asserts that one of the officers, most likely Browning, punched him in the ribs, the punch to the ribs occurred prior to the seizure. When a "non-seized" individual is physically injured by a law enforcement official, the Sixth Circuit analyzes an individual's excessive force claim pursuant to substantive due process under the Fourteenth Amendment. *See Claybrook v. Birchwell*, 199 F.3d 350, 359 (6th Cir. 2000). Under this analysis, a plaintiff must prove that the defendant's conduct "shocks the conscience." *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 847-50 (1998). In a "rapidly evolving, fluid, and [potentially] dangerous predicament," such as the one in the present case, the application of force by a government actor "shocks the conscience" only when "the force was applied maliciously and sadistically for the very purpose of causing harm." *Darrah v. City of Oak Park*, 255 F.3d 301, 306-07 (6th Cir. 2001) (explaining that an officer striking a plaintiff, who was grabbing the officer's ankle to prevent him from arresting another individual in an unruly crowd, did not shock the conscience). Browning's punch to Masters's ribs was not so malicious as to shock the conscience. Rather, the punch occurred during the initial seconds of the confrontation, when the officers were attempting to gain control of the situation and subdue Masters without resorting to serious or deadly force.

As Masters recounts, he fought with Casse before being tackled to the ground. (D.N. 46, PageID # 269) When Masters heard Browning announce that the Defendants were police

officers, he "backed off and put [his] hands up" for "two or three second[s]." (D.N. 39-5, PageID # 206) Browning then tackled both Masters and Casse to the ground.

Analyzing the totality of the circumstances, and taking the facts in the light most favorable to Masters, the Court finds that Browning acted reasonably under the conditions. Browning's actions reflect the type of split-second judgments that officers are required to make when determining how to best handle a given situation. *See Graham*, 490 U.S. at 396-97. In the heat of the moment, as Browning observed Masters fighting with Detective Casse, Browning observed an opportunity to gain control of the situation. With only a few seconds to think and react, Browning made a judgment call to tackle Masters. Judging from the perspective of a reasonable officer on the scene, and given the "tense, uncertain and rapidly evolving" situation, Browning's decision to tackle Masters was not unreasonable. *See id.* The second *Graham* factor also weighs heavily in favor of Detective Browning. Browning viewed Masters as an immediate safety threat to both himself and his partner. Browning saw an opportunity to subdue Masters and seized that opportunity in an effective and measured manner. *See id.* Thus, the evidence does not present a sufficient disagreement regarding whether Detective Browning violated Masters's Fourth Amendment right to be free from excessive force so as to require submission of the issue to a jury.

Under the standard for determining whether a defendant is entitled to qualified immunity, if the analysis under the first step suggests that no constitutional violation has occurred, then the analysis is complete and the Court should grant summary judgment to the defendant. *Davenport v. Causey*, 521 F.3d 544, 550-51 (6th Cir. 2008). Thus, the Court finds that Detective Browning is entitled to summary judgment and qualified immunity with regard to Masters's Section 1983 claim under the Fourth Amendment.

**B.     State Law Battery Claim**

The Court now examines whether the Defendants are entitled to qualified immunity in relation to Masters's state law battery claims. Kentucky law affords qualified official immunity to the discretionary acts of public officials performed in an official capacity, thereby shielding them from "liability for good faith judgment calls made in a legally uncertain environment." *Yanero v. Davis*, 65 S.W.3d 510, 522 (Ky. 2001). A law enforcement officer is entitled to qualified official immunity for the negligent performance of (1) discretionary acts or functions; (2) made in good faith; and (3) within the scope of the employee's authority. *Id.* Under the qualified official immunity analysis, once the public official has made a *prima facie* showing that the act was performed within the scope of his discretionary authority, the burden shifts to the plaintiff to establish that the discretionary act was not performed in good faith. *Id.* at 523. The qualified official immunity inquiry under state law is essentially identical to the federal qualified immunity inquiry under 42 U.S.C. § 1983. *Jefferson Cty. Fiscal Court v. Peerce*, 132 S.W.3d 824, 837 (Ky. 2004).

A discretionary act is one that requires the exercise of reason or deliberation and discretion in how or whether the act should be done. *Haney v. Monsky*, 311 S.W.3d 235, 240 (Ky. 2010) (detailing how qualified official immunity affords protection for discretionary acts rather than ministerial acts—those acts that require only obedience to the orders of others). In this case, the detectives have sufficiently demonstrated that their individual uses of force to seize Masters constituted discretionary acts; each act could have been performed in multiple ways and it was up to the judgment of the individual detective to determine in which ways they would be performed. *See id.* Furthermore, the use of force to effectuate the seizure was within the scope of the detectives' authority. *See City of Lexington v. Gray*, 499 S.W.2d 72, 74 (Ky. 1973)

14

(finding that a police officer "may use such force as [is] necessary or reasonably appeared to him to be necessary to take into custody the person he is seeking to arrest").

Because the Defendants have made a *prima facie* showing, the burden shifts to Masters to show that the Defendants acted with a lack of good faith or with "bad faith." *Yanero*, 65 S.W.3d at 522. Bad faith can be predicated on a violation of a "constitutional, statutory, or other clearly established right which a person in the public employee's position presumptively would have known was afforded to a person in the plaintiff's position, *i.e.,* objective unreasonableness; or if the officer or employee willfully or maliciously intended to harm the plaintiff or acted with a corrupt motive." *Id.*

It appears objectively unreasonable for Detective Casse to punch Masters in the face. *See supra* Part III.A.1. According to Masters, he ceased fighting immediately upon learning that the Defendants were law enforcement officers. He was subsequently tackled to the ground and was "pretty submitted to [the] police." Detective Casse then punched Masters in the face and broke his nose. Based on these facts, and the Court's previous conclusion, the Court now finds that Masters has presented sufficient evidence showing that a jury could conclude that Casse's use of force violated Masters's clearly established Fourth Amendment right and constituted bad faith under the state qualified official immunity standard.

Detective Browning did not act with bad faith. He did not violate any of Masters's constitutional rights. *See supra*, Part III.A.2. Moreover, Masters has not provided evidence indicating that Browning violated any statutory or other clearly established right possessed by Masters, or that Browning acted maliciously or with a corrupt motive. And so, Detective Browning is entitled to qualified official immunity against Masters's state law battery claim.

### C. Punitive and Compensatory Damages

The Defendants have moved for summary judgment with regard to Masters's punitive and compensatory damages claims. Because the Court will grant Detective Browning's motion for summary judgment, the Court need only address the claims as they pertain to Detective Casse.

Kentucky law requires a plaintiff seeking punitive damages to prove by clear and convincing evidence that the defendant acted with oppression, fraud, or malice. Ky. Rev. Stat. § 411.184(2); *see also Williams v. Wilson*, 972 S.W.2d 260, 264 (Ky. 1998). The fact finder need not conclude that the defendant acted with "express malice"; rather, "it is possible that a certain course of conduct can be so outrageous that malice can be implied from the facts of the situation. *Kinney v. Butcher*, 131 S.W.3d 357, 359 (Ky. Ct. App. 2004). To impose punitive damages, the conduct at issue must amount to at least common law "gross negligence." *Williams*, 972 S.W.2d at 264. "[T]here must first be a finding of failure to exercise reasonable care, and then an additional finding that this negligence was accompanied by 'wanton or reckless disregard for the lives, safety or property of others.'" *M.T. v. Saum*, 3 F. Supp. 3d 617, 623 (W.D. Ky. 2014) (citing *Horton v. Union Light, Heat & Power Co.*, 690 S.W.2d 382, 389-90 (Ky. 1985)). The standard can be met by producing evidence of a "probative and substantial nature carrying sufficient weight to convince ordinarily prudent-minded people of its validity." *Southard v. Belanger*, 966 F. Supp. 2d 727, 738 (W.D. Ky. 2013) (quoting *W.A. v. Cabinet for Health & Family Servs.*, 275 S.W.3d 214, 220 (Ky. Ct. App. 2008)).

In support of his request for summary judgment on this issue, Detective Casse points to no authority and provides only broad, conclusory claims. He simply asserts that his use of force was without malice and was justified based on the need for protection and self-defense. (D.N.

16

38-1, PageID # 137) He provides no elucidating case law or evidentiary support to sustain this proposition. Hence, Detective Casse has not carried his initial burden of identifying the basis for summary judgment, nor has he satisfactorily pointed to those parts of the record that demonstrate an absence of any genuine issue of material fact. Despite these shortcomings, the Court concludes that addressing punitive damages at this stage would be premature. The motion will be denied, but without prejudice. Casse may again raise the appropriateness of punitive damages should this matter proceed to trial on the surviving claims.

Unlike punitive damages, which are discretionary, compensatory damages must be awarded if liability is found. *Smith v. Wade*, 461 U.S. 30, 52 (1983). Once liability is found, the jury is required to award compensatory damages in an amount appropriate to compensate the plaintiff for his loss. *Id.*; *see also Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 350 (1974) (noting that compensatory damages may include costs for out-of-pocket loss and other monetary harms).

Casse provides no legal standard, no authority, and no factual support for this claim that he should be granted summary judgment with respect to Masters's claim for compensatory damages. For this reason, and because the Court has declined to grant Casse's motion for summary judgment on the Plaintiff's 42 U.S.C. § 1983 excessive force and state law battery claims, the Court rejects Casse's motion for summary judgment on this issue.

## IV. CONCLUSION

For the foregoing reasons, and the Court being otherwise sufficiently advised, it is hereby **ORDERED** as follows:

(1) Defendant Casse's motion for summary judgment (D.N. 38) is **DENIED** as to the Plaintiff's 42 U.S.C. § 1983 Fourth Amendment excessive force claim; as to the Plaintiff's state law battery claim; and as to potential imposition of compensatory damages. The Court declines

to consider that portion of Casse's motion for summary judgment that seeks to disallow consideration of punitive damages, and therefore denies the motion, without prejudice. The Court will consider the appropriateness of punitive damages claims at a later date, should the parties proceed to trial on the surviving claims. Casse's motion for summary judgment is **GRANTED** as to all other claims asserted in the first amended complaint.

(2) Defendant Browning's motion for summary judgment (D.N. 39) is **GRANTED**. A separate judgment will be entered this date.